128 So.2d 138 (1961)
Mary E. CALBECK, Appellant,
v.
TOWN OF SOUTH PASADENA, FLORIDA, a municipal corporation, George C. Dickson and James Harriman, Appellees.
No. 2052.
District Court of Appeal of Florida. Second District.
March 22, 1961.
J.A. McClure, Jr., McClure & Turville, St. Petersburg, for appellant.
Leonard W. Cooperman and E.M. Davis, St. Petersburg, for appellees.
ALLEN, Chief Judge.
This is an appeal by the plaintiff from the entry of a summary final judgment for the defendants Town of South Pasadena, George C. Dickson, its Mayor, and James Harriman, its Chief of Police.
The plaintiff filed an action for malicious prosecution against the defendants alleging that she was driving early in the morning on August 9, 1958, accompanied by her husband and a guest to her home in St. Petersburg through the Town of South Pasadena; that she was followed out of town by a South Pasadena police car operated by Edward Sroka; that after being stopped and conversing with Sroka she continued home followed by Sroka; that after more conversation at her home Sroka called the St. Petersburg Police Department who sent two officers to plaintiff's house; that plaintiff and her husband were arrested for disorderly conduct by the St. Petersburg police; and that after being charged and booked the plaintiff and her husband returned home. The complaint continues by alleging that the defendants conspired by issuing a warrant for her arrest on the afternoon of August 9, 1958, on the charge of "loud and noisy blowing of the vehicle horn which she was driving; that the mayor, Dickson, issued the warrant; that policemen of the Town of South Pasadena armed with the warrant went to plaintiff's home and arrested her; that she informed them her husband was in the hospital; that while clad only in a nightgown and bathrobe and barefooted, the police arrested her, refused to permit her to dress, *139 took her to the St. Petersburg police station and had her locked up in the St. Petersburg jail; that bond of $50 was set; that she was subsequently tried and convicted but her conviction was reversed on appeal; and that her conviction was obtained by fraud, perjury or other corrupt means.
The plaintiff also alleged that these actions by defendants were actuated by malice and were wilfully done in a wanton and oppressive manner and without probable cause.
The plaintiff then filed an affidavit of her attorney with appropriate records attached which showed that out of 323 cases docketed in the Town of South Pasadena City Court, between January 1st and August 5th, 1958, 50 defendants pleaded not guilty and upon trial only 6 were found innocent. The affidavit also showed that between August 6 and December 31, 1958, out of 211 cases, 35 defendants pleaded not guilty and only 2 were found innocent. The plaintiff filed another affidavit by her attorney to the effect that the defendant's City Attorney did not file a brief on her criminal appeal to the circuit court.
The plaintiff took the deposition of Davis, the City Attorney; Sroka, the defendant's officer who followed her home; Dickson, the Mayor of defendant town; and of Harriman, the defendant's Chief of Police. These depositions show that officer Sroka signed an affidavit that plaintiff blew her horn for five seconds two or three times; that after discussing the matter with the Mayor and the Chief of Police, Sroka signed a complaint; and that the plaintiff was subsequently arrested. The deposition of Sroka also shows that during his former testimony Sroka stated that he discussed the matter with the City Attorney prior to signing the complaint but Sroka stated in his deposition that he remembered that he did not discuss it with the City Attorney but only with the Mayor and Chief of Police.
After these depositions were filed, the defendant moved for summary judgment without having filed any answer or other pleadings. The court thereafter entered summary judgment for the defendants.
The Supreme Court of Florida, in Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193, held that when an individual suffers a direct personal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment, the injured individual may maintain an action against the municipality for redress of the wrong done.
The opinion of the Court in the Hargrove case, supra, written by Mr. Justice Thornal, emphasized that any interpretation that would impose liability on a municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; and Akin v. City of Miami, Fla. 1953, 65 So.2d 54, 37 A.L.R.2d 691, would be incorrect.
In the recent case of Middleton v. City of Fort Walton Beach, Fla.App. 1959, 113 So.2d 431, 432, in an opinion written by Judge Sturgis of the First District Court of Appeal, the facts are very similar to the case now before this court. The opinion of the court, after referring to the case of Hargrove v. Town of Cocoa Beach, supra, said:
"Aside from the strict limitation imposed by the above quotation, it is important to note that cases establishing the immunity of a municipality from liability for malicious prosecution (McCain v. Andrews, 139 Fla. 391, 190 So. 616) or for wrongful exercise of legislative functions (Elrod v. City of Daytona Beach, supra), or for wrongful exercise of judicial or quasi-judicial functions (Akin v. City of Miami Beach, supra), were not included in the Hargrove decision as examples of the class of cases inconsistent with each other. The acts involved in the case on appeal are quasi-judicial in character.

*140 "Incalculable mischief to the public welfare would unquestionably follow if the doctrine contended for were established."
Subsequent to Middleton v. City of Fort Walton Beach, supra, the Third District Court of Appeal decided the case of City of Miami v. Albro, Fla.App. 1960, 120 So.2d 23, 26, which was an action against arresting officers and the city for wrongful and malicious arrest and unlawful imprisonment. In the opinion of the court, written by Judge Pearson, the court commented on Middleton v. City of Fort Walton Beach, supra, as follows:
"* * * In the Middleton case, it was alleged that a police officer of the defendant city arrested the plaintiff pursuant to a warrant known by the officer to be void, and it was further alleged that the clerk of the municipal court had acted falsely and maliciously in executing the jurat to the affidavit and issuing the warrant for arrest. The court held that the arrest of the plaintiff pursuant to the warrant was an act which was quasi-judicial in character and therefore the doctrine of respondeat superior would not be extended in that case to render the city liable for such a tort. The acts as alleged in the instant case, of the use of excessive force in making an arrest without a warrant, cannot come within the protective cloak of immunity set forth in the Middleton case. * * *"
In Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049, Elrod was arrested and prosecuted for violating a peddler's ordinance, which ordinance was subsequently held unconstitutional. Action was brought against the city for damages for enforcing the ordinance, and the city was held not liable for damages. The enactment of the ordinance was a legislative function and the enforcement of the ordinance a judicial or quasi-judicial function.
In Akin v. City of Miami, Fla. 1953, 65 So.2d 54, the City of Miami condemned an uncompleted apartment building and refused to give a building permit thereafter to attempt to repair the structure to meet the building requirements of the city. Subsequently a declaratory decree was entered in favor of the owner, which decree was affirmed on appeal by the Supreme Court. The plaintiff then filed an action to recover damages from the city. The Supreme Court held that the city was not liable for damages because it was performing a governmental function. Both the Elrod and the Akin cases, supra, were excepted in the Hargrove opinion, supra, as being examples of the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions.
We are of the opinion that the lower court correctly entered a summary final judgment on the record in this case in favor of the Town of South Pasadena, Florida, a municipal corporation.
Summary judgments were also entered below in favor of George C. Dickson, City Mayor, and James Harriman, the Chief of Police of the city. Neither the arresting officers nor Edward Sroka are involved in this appeal.
The complaint alleged that Mayor Dickson, Chief of Police Harriman and other individuals maliciously conspired to prosecute the plaintiff by advising officer Sroka to sign an affidavit charging her with the violation of a municipal ordinance, having a warrant for her arrest issued, and having her arrested and placed in jail in lieu of a $50 cash bond, at a time when she was home alone with her children and her husband was in the hospital suffering from a coronary.
The complaint further alleged that as a result of the plaintiff's arrest she was tried and convicted in the municipal court of the Town of South Pasadena, Florida, which said conviction was set aside on appeal to the Circuit Court of Pinellas County, Florida, on the 11th day of May, 1959; that the defendant's actions leading to the arrest and imprisonment of plaintiff were actuated by malice and were wilfully done in a wanton *141 and oppressive manner and without probable cause.
Subsequently an amendment to the complaint was filed adding to Paragraph III on page 3 of the complaint the following:
"That Plaintiff's conviction was obtained by fraud, perjury, or other corrupt means."
The defendants, and each of them, moved for a summary judgment on the ground that the pleadings, depositions and admissions on file showed that there was no genuine issue as to any material fact concerning the liability of the defendants and each of them.
The plaintiff's attorney filed an affidavit in opposition to the defendants' motion for summary judgment. The gist of the two affidavits filed were, first, that the municipal court of the Town of South Pasadena had an extremely high ratio of convictions and that it appeared that only 1.5% of all the persons charged were adjudicated not guilty, and that more than 90% of those who plead not guilty were adjudicated guilty. Second, that the attorney for the city did not file a brief on the appeal to the Circuit Court and that when the time arrived for oral argument the attorney for the appellee made the statement in the court's chambers that he had not filed a brief because he knew that the conviction would be set aside.
We cannot conclude from the affidavits filed in opposition to the summary judgment that there was any fraud, perjury, or other corrupt means used in obtaining the conviction of the plaintiff so as to void the fact which appears in the plaintiff's complaint that after the plaintiff's arrest she was tried and convicted in the municipal court of the Town of South Pasadena, Florida. Nor do we find in the depositions with reference to the affidavits for the warrants signed by Sroka, which were done after he had related the facts to the Mayor and the Chief of Police of the city who had advised him to sign the warrant that resulted in the arrest of the plaintiff, any testimony favorable to the defendant that would preclude the entrance of summary judgment in the absence of any contrary affidavit by the defendant. We cannot hold that the affidavits made by the attorney for the plaintiff had any legal effect in opposition to the motion for summary judgment.
In the case of Duval Jewelry Co. v. Smith, 102 Fla. 717, 136 So. 878, 880, the Supreme Court, in its opinion, said:
"In Tatum Brothers Real Estate & Investment Company v. Watson, 92 Fla. 278, 109 So. 623, this court held that an action for malicious prosecution lies in all cases where there is a concurrence of the following elements: (1) The commencement or continuance of an original civil or criminal judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff. If any one of these elements is lacking, the result is fatal to the action.
"All of these elements must be established by a preponderance of the evidence, and the burden of proving them, including the concurrence of malice and want of probable cause, is on the plaintiff. Malice may be implied or inferred from want of probable cause, but want of probable cause cannot be inferred from malice."
In Goldstein v. Sabella, Fla. 1956, 88 So.2d 910, 911, 58 A.L.R.2d 1418, the Supreme Court held that in the absence of a showing that judgment for the landlord in an eviction case had been obtained by fraud, perjury, or other corrupt means, the judgment was conclusive on the question of whether the landlord had had probable cause for instituting the proceeding for eviction even *142 though the eviction proceeding judgment had been reversed on appeal. The Court, in its opinion, stated that Goldstein, in her complaint, alleged the filing of the eviction suit by Sabella; that judgment was rendered for Sabella therein; that said judgment was subsequently reversed on appeal; and that said eviction suit was brought maliciously and without probable cause. The Court then noted that there was no allegations in the complaint that the judgment for Sabella and against Goldstein in said eviction suit was obtained by fraud, perjury, or other corrupt means.
The Supreme Court in its opinion in Goldstein v. Sabella, supra, said:
"In our opinion a trial in a court of competent jurisdiction, which results in a judgment of conviction, or verdict for plaintiff, is a sufficient legal determination of the existence of probable cause and there would appear to be no valid reason to have that question determined again in another action. Nor does the fact that the judgment be subsequently reversed affect such determination. The reasoning and conclusion of this Court in Lewton v. Hower, supra [35 Fla. 58, 16 So. 616], supports this view, as does Laughlin v. St. Louis Union Trust Co., 330 Mo. 523, 50 S.W.2d 92. The case of Brooks v. Super Service, Inc., supra [183 Miss. 833, 183 So. 484, 185 So. 202], supports our holding that a subsequent reversal of a judgment of conviction does not destroy the effect of a judgment of conviction.
"If however it be shown that the judgment was obtained by fraud, perjury, or other corrupt means, the determination loses its aura of legality and validity and logically should no longer be considered as evidence of the existence of probable cause."
We have heretofore alluded to the effect that an amendment was filed to the complaint in the instant case alleging that the conviction was obtained by fraud, perjury or other corrupt means, but there were no facts set forth in the complaint nor was there any affidavits or other evidence adduced before the trial judge to show that the conviction was obtained by fraud, perjury, or other corrupt means, so as to preclude the fact that the plaintiff was convicted at the trial upon the charges against her alleged in the complaint.
We hold, therefore, that the lower court was correct in entering a summary judgment in favor of the Town of South Pasadena, Florida, a municipal corporation, and George C. Dickson and James Harriman, as the appellees in this case.
Judgment affirmed.
SHANNON, J., and GERALD, LYNN, Associate Judge, concur.