130 So.2d 105 (1961)
Jeannette THOMPSON, Appellant,
v.
CITY OF JACKSONVILLE, Florida, a municipal corporation, Appellee.
No. C-107.
District Court of Appeal of Florida. First District.
May 4, 1961.
Rehearing Denied May 29, 1961.
Will O. Murrell and Arthur T. Boone, Jacksonville, for appellant.
William M. Madison, Inman P. Crutchfield and Claude L. Mullis, Jacksonville, for appellee.
CARROLL, DONALD K., Judge.
The plaintiff has appealed from a final judgment entered by the Circuit Court for Duval County dismissing, without leave to amend, her second amended complaint against the City of Jacksonville, a municipal corporation.
The chief question before us on this appeal is whether such complaint sufficiently alleges a cause of action against the city.
In her said complaint the plaintiff alleges that at all times thereinafter mentioned she resided in a dwelling house at a certain address in the city of Jacksonville, occupying a bedroom in said premises, and that within thirty days after the happening of the injury alleged in her complaint she gave the city a written notice thereof as required by law. She claims damages in excess of the sum of $10,000 and demands trial by jury. The gist of her cause of action is stated in the following paragraph of the complaint:
"That at said time and place said police officers of the Police Department of said City, then and there acted in the course of their employment, carelessly and negligently broke into said premises and entered therein, and while therein searched said premises with great and negligent disregard for the plaintiff's right of privacy, which was thereby invaded, and said plaintiff was caused to suffer great mental and *106 physical pain and suffering, humiliation and embarrassment and plaintiff claims punitive damages of defendant."
For a better understanding of the pleading situation here we mention the fact that the original complaint and the first amended complaint filed by the plaintiff in this cause were dismissed by the Circuit Court expressly upon the authority of our decision in Middleton v. City of Ft. Walton Beach, Fla.App. 1959, 113 So.2d 431, evidently on the theory that those first two complaints alleged an intentional tort. While the court in the final judgment appealed from here did not expressly state that it was relying on our Middleton decision in dismissing the second amended complaint, it seems obvious to us that that decision was the basis for the said judgment.
Our consideration of the matters involved on this appeal requires us to review the opinion of the Supreme Court of Florida in the leading case of Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193, and our own opinion in Middleton v. City of Ft. Walton Beach, Fla.App. 1959, 113 So.2d 431.
In the Hargrove case the Supreme Court of Florida in a scholarly opinion written by Mr. Justice Thornal reviewed a large number of previous decisions in which that court had held that a municipal corporation was not liable for the negligent acts of municipal employees. In the Hargrove decision the Supreme Court then went on to recede from the doctrine recognized and applied in those earlier cases and announced the following rule as the law in Florida:
"* * * we here merely hold that when an individual suffers a direct, personal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment, the injured individual is entitled to redress for the wrong done." [96 So.2d 133]
In that case a widow filed an action for damages against a municipal corporation for the wrongful death of her husband who died of smoke suffocation after being locked in a jail which had been left unattended by a city jailer. The Circuit Court granted the city's motion to dismiss the complaint and the widow appealed. The Supreme Court reversed the judgment appealed from and remanded the cause for further proceedings. The language used by the Supreme Court in this landmark decision is so important in cases involving municipal liability for the torts of employees that we think the following lengthy quotation from the gist of the decision is warranted here:
"We therefore now recede from our prior decisions which hold that a municipal corporation is immune from liability for the torts of police officers. Affirmatively we hold that a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior. We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; and Akin v. City of Miami, Fla. 1953, 65 So.2d 54, 37 A.L.R.2d 691.
"Subject to the limitations above announced, we here merely hold that when an individual suffers a direct, personal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment, the injured individual is entitled to redress for the wrong done. To support the rule we hearken back to our original Florida precedent, City of Tallahassee v. Fortune, supra [3 Fla. 19]. Our judicial forebears there held that where an individual suffers a special personal damage not common to the community but proximately resulting *107 from the negligence of the municipal corporation acting through its employees, such individual is entitled to redress. We think this general rule was sound when it was announced in 1850 and it should be reestablished as the law of Florida. Within the framework of the above announced limitations this is the rule of our present opinion. In this vein, we therefore point out that instead of disregarding the rule of stare decisis, we now merely restore the original concepts of our jurisprudence to a position of priority in order to eradicate the deviations that have in our view detracted from the justice of the initial rule."
Our decision in Middleton v. City of Ft. Walton Beach, Fla.App. 1959, 113 So.2d 431, fell squarely within the exception to the rule of municipal liability as stated in the last sentence of the first paragraph quoted above from the Hargrove opinion  namely, the court's protection of its conclusion against any interpretation that would impose liability on the municipality in the exercise of judicial or quasi-judicial functions, etc. In the Middleton case, however, the appellant contended that the doctrine of respondeat superior should be extended to municipal corporations so as to render them liable for the intentional torts of their agents, employees, and officers, and contended that the rationale of the Hargrove case compelled the establishment of such a doctrine. In our opinion we declared our disagreement with this contention. We here adhere to the same view, and hold again that the Hargrove doctrine of municipal liability for torts of municipal employees should not be extended to include the intentional torts of such employees.
As mentioned above, our holding in the Middleton case that the doctrine in the Hargrove case of the liability of municipal corporations should not be extended to include intentional torts was apparently the basis for the court's ruling in the case before us that the plaintiff's second amended complaint failed to state a cause of action.
The complaint we must rule on in this appeal, particularly the gist of the allegations as quoted above, seems a relatively simple one, yet several interesting questions of law arise upon a judicial consideration of it. Is the tort alleged therein an intentional tort excluded from the doctrine of liability under the decisions in the Hargrove and Middleton cases? Is a "direct, personal injury" proximately caused by the negligence of a municipal employee while acting within the scope of his employment, sufficiently alleged to bring this complaint under the Hargrove doctrine? Are the acts of breaking and entering the only acts of negligence alleged in the complaint or can it also be rightly said that the searching was negligently done because done with negligent disregard for the plaintiff's right of privacy? Is the complaint sufficient legally to permit the recovery of punitive damages as claimed therein?
Under our rules of procedure and adjudication, when a court is considering the validity of a plaintiff's complaint upon the filing by the defendant of a motion to dismiss on the ground of failure to state a cause of action, one of the most important principles for a court to keep in mind is that in such consideration the court must confine itself strictly to the allegations within the four corners of the complaint itself. For the purpose of this consideration, also, the court must accept as true the allegations of fact contained in the complaint, and the court is without authority to speculate as to what the true facts may be or what facts will be ultimately proved in the trial of the cause. The consideration of an appellate court when reviewing the trial court's ruling on the validity of the complaint as against such motion to dismiss, is circumscribed by the same limitations. Applying these principles to the complaint before us, we hold that the complaint does not allege an intentional tort but rather one or more unintentional acts *108 of negligence. It is not for us to speculate as to whether the police officers in question actually intentionally broke into and entered the premises or intentionally searched the premises with great and negligent disregard for the plaintiff's right of privacy, for the plaintiff did not allege that these acts were intentionally done, and we are bound thereby in the present consideration.
The allegation in the complaint that the officers' search was made "with great and negligent disregard for the plaintiff's right of privacy," raises the question whether the "right of privacy" is legally recognized in this state. Florida is one of a minority of the states in this country that have recognized the right of privacy, though with limitations. See Cason v. Baskin, 1944, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430, Harms v. Miami Daily News, Inc., Fla. App. 1961, 127 So.2d 715, and 32 Fla.Jur., Torts, Sections 9 and 10, pages 136-138. While the clause in the complaint concerning the search "with great and negligent disregard for the plaintiff's right of privacy" may not be as definite and detailed as a defendant might naturally desire, we think this allegation is in substantial compliance with the requirements of Rule 1.8(b) of the Florida Rules of Civil Procedure, 30 F.S.A., as to statements of causes of action. Even if this clause were insufficient to allege a negligent act, that fact would not render invalid the entire complaint, since other allegations in the complaint, as we have held, sufficiently allege the negligent acts of breaking into and entering the premises in question.
The question whether the allegations of the complaint regarding the injury and the damages suffered came within the language in the Supreme Court's opinion in the Hargrove case is very difficult to answer. We do not deem it necessary to enter upon a metaphysical discussion of the relation between the mental and the physical in order to answer this question. Suffice it to say, we do not think that the words "direct, personal injury" as used in that opinion must be restricted exclusively to a traumatic physical injury, such as the breaking of an arm, but think that that language is broad enough to cover the injuries alleged in the quoted paragraph of the complaint.
The claim of the plaintiff for punitive damages against the defendant at the end of the paragraph quoted above from the complaint before us cannot, however, be sustained under the allegations of the complaint.
As the Supreme Court of Florida pointed out in Winn & Lovett Grocery Co. v. Archer, 1936, 126 Fla. 308, 171 So. 214, 221, exemplary or punitive damages
"* * * are given solely as a punishment where torts are committed with fraud, actual malice, or deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. Exemplary or punitive damages are therefore damages ultra compensation, and are authorized to be inflicted when the wrong done partakes of a criminal character, though not punishable as an offense against the state, or consists of aggravated misconduct or a lawless act resulting in injury to plaintiff when sought to be redressed by a civil action for the tort.
"Exemplary or punitive (sometimes called vindictive) damages are assessable dependent on the circumstances showing moral turpitude or atrocity in the defendant's conduct in causing an injury that is wanton and malicious or gross and outrageous to such an extent that the measured compensation of the plaintiff should have an additional amount added thereto as `smart money' against the defendant, by way of punishment or example as a deterrent to others inclined to commit similar wrongs."
*109 In the cited case the Supreme Court also laid down the rule concerning the allegations that must be made in the declaration (or complaint, under our new rules) in order to recover punitive damages, as follows:
"In order to recover exemplary or punitive damages, the declaration must allege some general facts and circumstances of fraud, malice, gross negligence, or oppression tending to show plaintiff's right to recover such damages in addition to damages by way of compensation. But punitive or exemplary damages need not be described or demanded in the declaration by that name, in order to be recoverable."
Applying these rules to the second amended complaint in the present appeal, we do not find that the allegations therein sufficiently show facts and circumstances of fraud, malice, gross negligence, or oppression to show the appellant's right to recover punitive damages in addition to compensatory damages. The demand in the said complaint for punitive damages may then be treated as surplusage subject to being stricken upon proper motion.
We, therefore, hold that the plaintiff's second amended complaint does state a cause of action for compensatory damages and that the defendant's motion to dismiss directed to it should have been denied. Our ruling, of course, is necessarily restricted to the allegations of this complaint as allegata, and a defendant in this situation is afforded by our Rules of Civil Procedure several ample opportunities to see that the cause of action proved under the complaint measures up to the legal requirements recognized by the courts for the cause of action  through discovery procedures, motion for summary judgment, and motion for a directed verdict. After trial the legal sufficiency of the evidence can be tested through a motion for a new trial and appeal. Similar opportunities under our procedure are afforded a plaintiff to test the legal sufficiency of the evidence presented by a defendant in support of the allegations in his defensive pleadings.
In view of our holding sustaining the second amended complaint, we deem it unnecessary directly to pass upon here the validity of the original and first amended complaints, which the trial court had also dismissed.
The final judgment appealed from is reversed and the cause is remanded with directions for further proceedings consistent with the views herein expressed.
Reversed and remanded with directions.
WIGGINTON, C.J., and STURGIS, J., concur.