237 So.2d 132 (1970)
William WONG, William F. Mah, Herbert Brameister, Marilyn Edelblum, Sampson's Market, Inc. and the Shelly Corporation D/B/a Bon Marche Cleaner's, Petitioners,
v.
CITY OF MIAMI, a Municipal Corporation, and Dade County, a Political Subdivision of the State of Florida, Respondents.
No. 39295.
Supreme Court of Florida.
June 17, 1970.
Larry S. Stewart, of Frates, Fay, Floyd & Pearson, Miami, for petitioners.
Alan H. Rothstein, City Atty., and John S. Lloyd, Asst. City Atty., for City of Miami.
Thomas C. Britton, County Atty., and St. Julien P. Rosemond, First Asst. County Atty., for County of Dade.
CARLTON, Justice.
Upon petitioners' application, we review here a decision of the District Court of Appeal, Third District, 229 So.2d 659, certified as one passing upon a question of great public interest,
"[B]ecause it passes on the liability of a municipality or political subdivision of the State for damage occasioned to citizen or his property during a riot, or time of civil disobedience, etc."
Through its decision, the District Court, by vote of two-to-one, affirmed an order entered by the Circuit Court, Dade County, dismissing petitioners' complaint for failure to state a cause of action. We approve this affirmance.
*133 This litigation stems from disorders which occurred in the City of Miami in August, 1968, while the Republican National Convention was being held on Miami Beach. A rally featuring civil rights speakers was scheduled in Miami for the afternoon and evening of August 7th. Merchants bordering the rally area requested increased police protection as they were fearful of possible results of the assembly. Subsequently, numerous city police officers were stationed in the vicinity. As the evening wore on, these officers were removed by direct order of the Mayor. This removal was confirmed by an order issued by the Sheriff of the County.
Thereafter, certain participants in the rally lost restraint and turned to plundering neighboring stores. By the time police control was re-established, damage in excess of $100,000.00 had been sustained by the merchants who are petitioners here.
Petitioners filed suit for damages against respondents, primarily on the theory that removal of the officers was a careless and negligent act since respondents knew, or should have known, that damage to petitioners' interests would result. The City countered with a motion to dismiss the complaint for failure to state a cause of action because: (1) No sufficient connection was alleged between withdrawal of the officers and the injuries complained of; (2) Police protection was a duty owed the public generally which would not inure to the benefit of particular private citizens; and, (3) Removal of officers was within the realm of governmental discretion. The County countered with a motion for summary judgment. The Circuit Court granted respondents' motions and dismissed petitioners' complaint with prejudice.
The arguments advanced by the litigants here are similar to those advanced below. Petitioners recognize that police protection is a duty owed to the public generally, but contend that by stationing officers at the request of petitioners, the respondent City took on itself a specific obligation to exercise due care. Petitioners cite as authority for this proposition cases such as Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), Shealor v. Ruud, 221 So.2d 765 (4th D.C.A. Fla. 1969), and Tweedale v. City of St. Petersburg, 125 So.2d 920 (2nd D.C.A. Fla. 1961). The District Court Judge dissenting below agreed with this line of reasoning and said, 229 So.2d at 662:
"I am not in disagreement with the rule of law observed by the majority that at common law a governmental unit had no responsibility for damage inflicted upon its citizens or property therein as a result of a riot or unlawful assembly. However, I consider that rule is not applicable where, without legal obligation to do so, such a governmental unit with knowledge of a riotous assembly, or of an assembly which may develop into a riot causing damage to adjacent properties, first furnishes police protection adequate to prevent such injuries and then withdraws all police protection, abandoning the nearby property owners to the imminent danger of loss."
In opposition to the above, respondents amplified the arguments presented in behalf of the City's motion to dismiss for failure to state a cause of action. They assert that at common law a governmental unit had no responsibility for damage inflicted upon citizens or property as a result of riot, and that no statutory change has been made in this policy. They also assert that Hargrove v. Town of Cocoa Beach, supra, and subsequent cases on governmental liability apply only to situations where individuals suffer "special personal damage not common to the community but proximately resulting from negligence of municipal employees," and cannot apply to the discretionary exercise of police powers regarding the tactical deployment of officers at a time of civil unrest. This was the view taken by the trial court and the District Court majority, the latter citing Steinhardt v. Town of North Bay Village, *134 132 So.2d 764 (3rd D.C.A. Fla. 1961) by way of analogy.
We agree with respondents' arguments and with the decision announced by the District Court majority. But we are somewhat disturbed with what we perceived to be inferences appearing in the majority opinion and in the brief of the County that the removal of the officers was a negligent act and that respondents are shielded from liability merely because sovereign immunity has not been relaxed sufficiently by prior decisions. The District Court majority, for example, in citing Steinhardt, supra, said that "the reasoning found in the opinion * * * in holding that a municipality was not liable for damages occasioned by the negligent performance of its fire department, should be analogous to the situation at bar." (Emphasis supplied.)
While sovereign immunity is a salient issue here, we ought not lose sight of the fact that inherent in the right to exercise police powers is the right to determine strategy and tactics for the deployment of those powers. In the Report of the National Advisory Commission on Civil Disorders, issued pursuant to Executive Order 11365 in 1967, the point was frequently made that police visibility was often an operative factor in the raising of tensions, and that withdrawal from an area could be a highly useful tactical tool for the relaxing of tensions in certain situations. The sovereign authorities ought to be left free to exercise their discretion and choose the tactics deemed appropriate without worry over possible allegations of negligence. Here officials thought it best to withdraw their officers. Who can say whether or not the damage sustained by petitioners would have been more widespread if the officers had stayed, and because of a resulting confrontation, the situation had escalated with greater violence than could have been controlled with the resources immediately at hand? If that had been the case, couldn't petitioners allege just as well that that course of action was negligent?
The decision of the appellate court here reviewed having properly affirmed the judgment of the lower court, the writ heretofore issued in this cause should be, and hereby is, discharged.
It is so ordered.
ERVIN, C.J., and ROBERTS, DREW and BOYD, JJ., concur.